No. 15,021.

LUCERO *v.* SMITH, DOING BUSINESS AS RAY SMITH MOTOR COMPANY.

(132 P. [2d] 791)

Decided December 7, 1942.   Rehearing denied January 11, 1943.

Mr. J. V. REDMOND, Mr. DEON DREFKE, for plaintiff in error.

Mr. RAYMOND M. SANDHOUSE, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

IN an action against plaintiff in error on a cognovit note, instituted July 29, 1940, an attorney at law, not otherwise representing him, proceeding pursuant to the provisions of the note, seemingly ample to that end, appeared in the action the same day, waived issuance and service of process, and confessed judgment in favor of defendant in error in the sum of $632.50, $550 being the claimed balance thereon, to which was added $82.50 as an attorney fee, computed as provided in the note. The court immediately entered judgment in the sum of the confession, and ordered that execution issue forthwith. Execution issued accordingly, and levy was made on a truck that was involved in the transaction, and a small home owned by plaintiff in error in the town of Crook. At sheriff's sale conducted August 31, 1940, defendant in error purchased the truck for $400.00 and the home for $200.00, $600.00 in the aggregate, leaving

a deficiency judgment after the payment of costs in the sum of $83.83.

September 5, 1940, plaintiff in error filed motion to vacate the judgment, supported by his affidavit to the effect that he had no knowledge of the action, the judgment, the execution or the sheriff's sale, until September 1, 1940, when he returned home from a protracted absence; and that he had a good and valid defense to the cause, sufficiently stated—not questioned, and asked to be permitted to make answer thereto. September 6, 1940, defendant in error moved to strike plaintiff in error's motion to set aside the judgment and for opportunity to answer, for that, as said, the motion was not made in apt time. January 20, 1941, much showing in the meantime, pro and con, by leave of court having been interposed, plaintiff in error's motion to vacate the judgment and enjoy opportunity to answer, not having "been filed in apt time," as the trial court found, was overruled.

Lucero is described by his counsel as a Spanish-American. Statements in the record indicate that he has no farming property, but works out in the fields, harvesting fruits and vegetables. He is the father of four boys (motherless) all of whom live with him. It is his contention that he was absent from his home in the town of Crook, working in the fields and visiting, all of the time from July 22, 1940, until September 1, 1940, and had no knowledge of events taking place in Crook and in Sterling during that period. Upon his return, September 1, 1940, so he avers, his eldest son—the other three had accompanied him to the fields—handed him an unopened registered letter, dated August 8, 1940, from an attorney for Smith, advising him of the sheriff's sale, enclosing a copy of the notice of sale.

September 3, 1940, Lucero engaged counsel for the purpose of making application to set the judgment aside, and September 5, 1940, such a motion and plaintiff in error's affidavit in support thereof, were filed. Other

affidavits and counter affidavits were filed, and Lucero's deposition was taken as on cross-examination under the statute.

Lucero in his first affidavit stated he "was absent from his home on a trip into the state of New Mexico from the 5th day of August, 1940, to the 1st day of September, 1940, and that he had no knowledge that said judgment was taken until on September 1, 1940."

The attorney first representing Smith, made affidavit that he wrote and mailed a letter to Lucero, dated July 23, 1940, advising that he had Lucero's note and that it was due and payable; that he mailed still another letter to Lucero dated July 31, 1940, advising judgment had been taken and levy made; that August 8, 1940, he mailed a third letter, registering it, to Lucero, informing him of the pending sheriff's sale and enclosing a copy of the notice of sale.

In an additional affidavit Lucero stated that he did not receive the letters from the attorney dated July 23, 1940 and July 31, 1940. He further stated that upon prior occasions his mail had not been delivered, this lack of delivery occurring during the spring and summer of 1940; that there was another Lucero in the neighborhood and that their mail was sometimes confused; that he left his home in Crook July 22, 1940, going first to Sterling, and from there to three other Colorado cities, Fort Lupton, Brighton and Longmont; that he took with him his three younger sons; that August 5, 1940, he left Colorado on a trip to New Mexico, returning first to Fort Lupton August 25th or 26th, 1940, stopped with his brother at Johnstown, and thence to his home in Crook on September 1, 1940; that on arriving at his home, he was handed the registered letter of August 8, 1940, this being his first knowledge of the existence of the judgment.

In the foregoing affidavit Lucero also stated that July 22, 1940, he purchased in Sterling, a bicycle for his

eldest son, and that the bicycle was to be delivered by the store where purchased. A cancelled "paid" check covering the purchase appears, and delivery is affirmed by an affidavit of one Frank Wazney, an employee of the merchant, who states he sold the bicycle to Lucero at the time mentioned, and had it delivered to the eldest son a day or two later.

The eldest son, Luis Lucero, made affidavit to the effect that he remained in Crook while his father and brothers left home for points in Colorado and New Mexico; that they left July 22, 1940, and did not return until September 1, 1940; that there was no mail from the attorney for Smith during that time except the registered letter dated August 8, 1940; that Lucero had left no forwarding address and he was unable to communicate with his father.

Affidavit of Robert Lucero and Bill Lucero, other sons, stated that they and their youngest brother accompanying their father, left Crook July 22, 1940, stopped at Sterling, where their father purchased a bicycle for their oldest brother at home for $40, and instructed the store employees to deliver it to the brother at Crook; that affiants and their father went on to Fort Lupton the same day and there worked in the fields and orchards; that August 5, 1940, their father accompanied one Romero to New Mexico, returning to Fort Lupton about August 25 or 26; that they all returned to Crook, September 1; that neither affiants nor their father had any mailing address other than their home at Crook to which mail could be sent during such absence.

In an affidavit by one Curtis Carlson it is stated that he delivered the bicycle sold to Lucero by Frank Wazney in the store at Sterling; that he made delivery July 23, 1940; that there was no member of the Lucero family at home; that he left the bicycle with some grown boys about the place and was informed by them that Lucero had left for the mountains and New Mexico. About a week later, checking on the delivery, he found the eldest

boy at home and was told by him that his father and brothers were absent and would be for some weeks.

J. W. Murphy, a grocer in Crook, stated that he had known the Lucero family for four years; that Lucero, taking some of his sons with him, had left Crook during the last week in July, "about July 22, 1940;" that he was absent until September 1, 1940. Another grocer in Crook, one I. C. Buterbaugh, stated that Lucero was away from Crook all of the last week of July and all of August, 1940.

In an affidavit by Luceano Lucero, a brother of plaintiff in error, he stated that his brother and three sons came to his home in Johnstown, Colorado, the evening of July 22, 1940, working thereafter in the' bean fields near Plattville and Fort Lupton until August 5, 1940, when his brother left for New Mexico; that Lucero returned to Luceano's home about August 25, 1940, remaining several days, and left for home September 1, 1940.

A farmer living near Crook, George G. Keil, averred in an affidavit that from May 20, 1940, to and including the fore part of August, 1940, he had in his employ four beet laborers by the name of Lucero who received their mail at the post office in Crook.

The postmaster at Crook in an affidavit stated that she knew a beet worker named Lucero other than the plaintiff in error, but that she knew of no mix-up or misdelivery of mail for that reason.

There are affidavits by two women, Mrs. Reuben Koehler and Mrs. Elmer George. Inasmuch as both of these affiants later changed their original statements no attention will be given them.

George Waltz, a farmer of Crook, averred in an affidavit that he employed a certain Lorenzo Lucero and never knew of Lorenzo's mail becoming confused with that of plaintiff in error.

There are two affidavits, one by Cecil Robinson, the other by Charlie Moore, both of Crook. They aver that

they saw Lucero in Crook from August 3, 1940, until August 11, 1940.

The foregoing abstract of the several affidavits is a fair appraisal of what they set out in extenso. There are other affidavits, all of which have been noticed and read.

■■ There are four assignments of error, but we confine our consideration to the one reading: "That the court erred in finding that the motion or application of plaintiff in error to set aside the judgment had not been filed in apt time."

Was the plaintiff in error guilty of laches? We are persuaded otherwise. Counsel for Smith urges consideration of the demeanor of Lucero at the time of the examination under the statute, "his pretended ignorance of the English language, and his pretended failure to understand the questions propounded," as compared with his affidavit and those of the members of his family, said to be "polished and glib and effusive." We are unable to follow counsel in the thought that such comparison should work the undoing of Lucero. In preparing affidavits for the unlettered, it is expected that counsel, observing care, will set forth the facts related by such affiants in the language of the learned.

We find no conflict in the affidavits of plaintiff in error, or between either of them and his oral testimony. His first affidavit sets forth that he "was absent from his home and on a trip into the state of New Mexico from the 5th day of August, 1940, to the first day of September, 1940." In another affidavit he asserts that he left his home July 22, 1940, for different localities within Colorado, leaving for New Mexico August 5, 1940. All the affidavits, direct and cross, affirm that the plaintiff in error was constantly moving about. The evidence is conclusive that he was in Sterling July 22, 1940, and purchased a bicycle. It is equally conclusive that he was not in Crook July 23, 1940, and had not returned a week after that date. This conclusion is based upon the affi-

davits of two employees of the store in Sterling where the bicycle was purchased. The statement in their affidavits is supported by that of the two grocers of Crook, Murphy and Buterbaugh, covering the time plaintiff in error was absent from Crook "during the last week in July," from "about July 22, 1940," and all of August, 1940. The affidavits of Cecil Robinson and Charlie Moore are damaging to the theory of plaintiff in error's absence during the period from July 22, 1940 to September 1, 1940, but in view of statements made by both these affiants otherwise, and the several affidavits contrary, they appear to be confused in their recollection. We do not question the mailing of the two letters of July 23, 1940, and July 31, 1940, by counsel for defendant in error, but there is no evidence that plaintiff in error received them. In this connection it appears that there are at least five men, other than members of the family of plaintiff in error, by the name of Lucero, who received mail at the post office in Crook. We do not assume that any of these Luceros received mail directed to the plaintiff in error, indeed the postmaster at Crook denied it, but neither must we assume that because a letter, unregistered, is mailed to a person he necessarily receives it. Plaintiff in error says he did not receive these two letters, and no person stated that he did.

A careful consideration of the entire record convinces us that plaintiff in error was not aware of his legal position until September 1, 1940. Within two days thereafter—one of them a holiday—he employed an attorney for the purpose of procuring a setting aside of the judgment, and the attorney acted promptly. The motion to vacate the judgment and first affidavit of plaintiff in support thereof, as already related, were filed September 5, 1940. We are persuaded that plaintiff in error, laboring under inherent difficulties, proceeded aptly. Predicated so, the rule stated by Mr. Justice Burke in *Philbrick v. Conejos Bank,* 71 Colo. 19 (203 Pac. 678), is controlling: "The defendant was entitled to have this

judgment set aside for a good defense on the merits, if his affidavit showed *prima facie,* such a defense, and if his application was made in apt time, notwithstanding the counter affidavit that the defense was bad." See *Richards v. First Nat. Bank,* 59 Colo. 403, 148 Pac. 912, and *Denver Industrial Corp. v. Kesselring,* 90 Colo. 295, 8 P. (2d) 767. In the Kesselring case the late Mr. Chief Justice Adams wrote the opinion, and in the course thereof said: "The affidavit stated a meritorious defense, and so, it was the duty of the court to vacate the judgment and try the case on its merits, when a motion to that effect was made in apt time." The whole record considered, it is fair to require defendant in error to meet the challenge tendered by the showing, and failure to require it would be unfair to plaintiff in error.

That the trial court may vacate its judgment, recall the writ of execution issued thereon, cancel the sheriff's sale made by virtue thereof, fix a reasonable time within which plaintiff in error may answer as advised, and proceed in regular course, let the judgment be reversed.